# 14-3149

## UNITED STATES COURT OF APPEALS
## for the
## SECOND CIRCUIT

MICHAEL GREEN,

*Plaintiff-Appellant*,

vs.

DISTRICT COUNCIL 1707, AMERICAN FEDERATION
OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO; and RAGLAN GEORGE, JR., Individually,

*Defendants-Appellees.*

———————————

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## PLAINTIFF-APPELLANT MICHAEL GREEN'S BRIEF

Margaret McIntyre
Attorney at Law
299 Broadway, Suite 1310
New York, New York 10007
(212) 227-9987
*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT I     THE AMENDED COMPLAINT SETS FORTH
A *PRIMA FACIE* CASE IN THAT GREEN'S
REPLACEMENT WAS OUTSIDE OF GREEN'S
PROTECTED CATEGORIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

A.   Green is a member of a protected category and was
qualified for the job he lost.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.   Green suffered an adverse action in that his employment was
terminated in a way that deprived him of post-termination benefits... . . . . 14

C.   Green was replaced by an employee outside his protected categories . . . . 15

POINT II    GREEN'S FIRING WAS PART OF A PATTERN
OF DISPARATE TREATMENT OF CAUCASIAN
AND JEWISH EMPLOYEES AS COMPARED TO
SIMILARLY SITUATED AFRICAN AMERICAN
AND LATINO EMPLOYEES. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.   Green was similar to and treated differently from Employee A.. . . . . . . . 17

B.   Green was similar to and treated differently from Employee B.. . . . . . . . 20

C.   Green was similar to and treated differently from Employee C.. . . . . . . . 26

i

POINT III   GREEN'S AMENDED COMPLAINT SETS
            OUT ADDITIONAL FACTS THAT PROVIDE
            CONTEXT AND SUPPORT HIS CLAIMS OF
            DISPARATE TREATMENT BASED ON RACE............... 28

CONCLUSION  ................................................ 30

# TABLE OF AUTHORITIES

## <u>CASES</u>

<u>Page</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39 (2d Cir. 2012) . . . . . . . . . . 12

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014). . . . 9, 10, 13, 16, 20, 26, 27

*Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134 (2d Cir. 1999). . . . 12

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000). . . . . . . . . . . . . . . . 10, 17

*Hudson v. Int'l Business Machines Corp.,* 620 F.2d 351 (2d Cir. 1980). . . . . . . . 12

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007). . . . . . . . . . . . . . 11

*Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258 (2d Cir. 2000). . . . . . . . 11, 12

*Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003) . . . . . . . . . . . . . . . . 17

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). . . . . . . . . . . . . . . 12, 25

*McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . 16

*Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89 (2d Cir.1999). . . . . . . . . . . . 16

*Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2d Cir. 1992). . . . . . . . . . . . . . . . . . 24

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). . . . . . . . . . . . . . . . . . . . . . 12

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). . . . . . . . . . . 12

iii

*White v. Eastman Kodak Company*, 368 Fed. Appx. 200,
Summ. Order (2d Cir. 2010) ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Zimmermann  v. Assocs. First Capital Corp.*, 251 F.3d 376 (2d Cir. 2001). . . . . 15

## <u>STATUTES AND RULES</u>

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 9, 11, 12, 30

Fed.R.Civ.P. 8(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Civ.P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Fed.R.Civ.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 13

New York City Human Rights Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

New York Labor Law §190(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

New York Labor Law §193 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## JURISDICTIONAL STATEMENT

(A) This action alleges violations, inter alia, of 42 U.S.C. §1981, to redress the discriminatory firing of and denial of benefits to Plaintiff-Appellant Michael Green (hereinafter "Green") on the basis of Green's Caucasian race and Jewish ancestry. The District Court for the Southern District of New York had jurisdiction pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction over plaintiff's state and city claims, pursuant to 28 U.S.C. § 1367.

(B) This Court has appellate jurisdiction, pursuant to 28 U.S.C. §1291, of a final decision of the District Court, the subject mater of this appeal.

C) The Notice of Appeal was timely filed on August 19, 2014, from a Judgment entered July 29, 2014.

(D) This appeal is from a final Opinion & Order and Judgment that disposes of Green's federal claims and declined to exercise supplemental jurisdiction over his claims under state and city law.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

1. Whether the District Court erred in dismissing Green's claims under 42 U.S.C. §1981 as failing to plausibly state a claim when the amended complaint contained factual allegations that three employees outside of Green's protected categories, who also reported to the individually named defendant, were treated more leniently than Green in that, when they were deemed worthy of firing, they

were allowed to resign and receive post-termination benefits while Green was not, and when the amended complaint also alleges that the same individually named defendant treated two other members of Green's protected categories unjustly in the context of those two employees' terminations from employment?

## STATEMENT OF THE CASE

Green was employed by Defendant-Appellee District Council 1707, American Federation of State, County and Municipal Employees, AFL-CIO ("Defendant-Appellee DC 1707" or "DC 1707") for nearly twenty-two years, most recently as Organizing Director, an Assistant Director level position reporting to the Executive Director. Plaintiff-Appellant was unlawfully fired by Defendant-Appellee Raglan George, Jr. ("Defendant-Appellee George" or "George"), who is African-American and was Executive Director of Defendant-Appellee DC 1707.

This lawsuit challenges Defendants-Appellees' discriminatory termination of Green's employment and their unlawful withholding of post-termination benefits on the basis of Green's Caucasian race and Jewish ancestry, in violation of 42 U.S.C. §1981 and the New York City Human Rights Law. Green also claims that defendant-appellees' non-payment of vacation and severance pay violates §190(1) and §193 of the New York Labor Law and common law.

Throughout his employment with Defendants-Appellees, Green was treated less well than similarly-situated employees who were not Caucasian or Jewish,

2

and the situation that Defendants-Appellees claim led to Green's termination was provoked by Defendant-Appellee George, in no way warranted termination and was a pretext for discrimination. Latino and African-American employees who, like Green, held Assistant Director level jobs and reported directly to Defendant-Appellee George, were permitted to resign and collect post-termination benefits despite engaging in actual misconduct. Plaintiff-Appellant was fired in a manner intended to preclude him from collecting post-termination benefits and he was denied those benefits. Two other Caucasian and Jewish Assistant Director level employees were also unjustly terminated by George.

Green filed the complaint in this action on December 6, 2013. (A1). On March 6, 2014, Defendants-Appellees filed a motion to dismiss. (A2) By Order dated March 10, 2014, the Court permitted Green to file an amended complaint by March 27, 2014. (A3). On March 11, 2014, Defendants-Appellees filed a motion pursuant to Rule 11 of the Federal Rules of Civil Procedure ("FRCP") for sanctions based on the complaint. (A3). Plaintiff opposed the motion. (A3). On March 27, 2014, Green filed his amended complaint (hereinafter referred to as it was in the District Court opinion below as First Amended Complaint or "FAC"). (A3). On April 17, 2014, Defendants-Appellees filed a motion to dismiss, pursuant to FRCP 12(b)(6), to dismiss solely those claims in the FAC brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1981. (A4).

3

The Honorable Paul A. Engelmayer, United States District Judge, granted Defendants-Appellees' motion to dismiss the FAC, finding that Green failed to state claims of race discrimination in violation of 42 U.S.C. §1981. The District Court declined to exercise supplemental jurisdiction over Green's claims under state and city law. (A35-A54)[1] This appeal followed.

## STATEMENT OF FACTS

Green was employed by Defendant-Appellee DC 1707 from in or about September 1991 until his employment was terminated on May 17, 2013. FAC ¶ 13 (A9). For part of his employment, Green was a member of the DC 1707 Professional Employees Union, which has a collective bargaining agreement with defendant-appellee DC 1707 (hereinafter "the Professional Staff CBA"), and for other parts of his employment, Green was not a union member. FAC ¶ 14 (A10). In or about September 2008, Green began serving as Organizing Director with defendant-appellee DC 1707, which was considered an Assistant Director level job and was a non-union position. FAC ¶¶ 15-16 (A10).

Green was qualified for the positions that he held with Defendant-Appellee DC 1707. FAC ¶ 17 (A10). Although he never received formal performance evaluations, Green was successful in his role as Organizing Director, bringing in

_____

[1] The District Court also denied Defendants-Appellees' Rule 11 motion, which is not being appealed.

4

approximately 250 new members per year. FAC ¶¶ 18, 20 (A10). At no time during his employment was Green issued a warning that his overall work performance was unsatisfactory or deficient. FAC ¶ 19 (A10).

Throughout his employment with Defendants-Appellees, Green was treated less well than similarly-situated employees who were not Caucasian or Jewish. FAC ¶ 21 (A10). Defendant-Appellee George, who is African-American, evinced a dislike of Green from the time he met him that was not based on any specific reason he communicated to Green. FAC ¶¶ 22-23 (A10-A11). Specifically, whenever George spoke to Green about Green's work responsibilities, he used a derisive tone of voice that suggested disgust with Green. Even when Green was reporting positive information to George, George reacted with negativity. In addition, George regularly spoke to Green in a derogatory tone, in private and in front of Green's colleagues. Over the years, many of Green's colleagues commented about the abusive way George spoke to Green. FAC ¶¶ 25-26 (A11).

Throughout the time that Green worked for Defendant-Appellee DC 1707, more than 80% of the approximately 35 employees were either African-American or Latino. FAC ¶ 38 (A14). While Green served in an Assistant Director position with defendant-appellee DC 1707, either five or six of the eight Assistant Directors were African-American or Latino. At the time of his termination, Green was the only Caucasian and Jewish Assistant Director. FAC ¶¶ 39-40 (A14-A15).

On May 17, 2013, George goaded Green by repeatedly insisting that Green was not doing his job. Finally, Green told George that if he left his office, he would be aware of the work that Green had been doing. George became incensed at Green's response and began screaming at Green. In defense, Green then also raised his voice and insisted that he was doing the work that George was falsely accusing him of failing to do. George concluded the exchange by telling Green to "take a hike." FAC ¶ 53 (A17).

Shortly thereafter, Green was given a memorandum from George, informing him that he was being fired "effective today" for insubordination. The letter also ordered Green to prepare the report that was due by May 28, 2013, and stated that at that point, George would reconsider Green's position. FAC ¶ 54; FAC Ex. A (A18, A33). Over the weekend, Green spoke with the Associate Executive Director of defendant-appellee DC 1707, who confirmed that Green was in fact fired and should not return to work. FAC ¶ 55 (A18). Green's termination was further confirmed when defendant-appellee George held a staff meeting on or about Monday, May 20, 2013, to advise staff that Green had been fired and to discuss how Green's responsibilities would be handled going forward. FAC ¶ 56 (A18). Green was replaced by an African-American man. FAC ¶ 41 (A15).

Upon being fired, Green ceased working on the report he had been preparing. FAC ¶ 57 (A18). Defendant-Appellee George's decision to fire Green

6

was unjustified by the circumstances given Green's long employment record and George's instigation of the dispute, and therefore the claim that Green was "extremely insubordinate," was a pretext for discrimination. FAC ¶¶ 58-59 (A18). To Green's knowledge, George has never fired an African-American or Latino employee and ordered that employee to continue working, without pay, if he or she wanted to be considered for reinstatement. FAC ¶¶ 54, 61 (A18, A19).

Moreover, Green alleges that George fired Green in the manner he did to prevent Green from resigning and collecting severance benefits. FAC ¶ 60 (A19). This, too, contrasts with the way in which George treated a Latina employee, in 2007, who was discovered to have used a credit card belonging to defendant-appellee DC 1707 for personal use, in violation of union policy. Although her actions amounted to misconduct, that employee was permitted by George to resign from her employment rather than be fired, so she collected sick, vacation and severance pay. FAC ¶¶ 70-73 (A20).

Similarly, in 2013, George permitted an African-American Assistant Director to resign from her employment, even though that employee had failed to enroll union members in a health insurance plan, which failure could have amounted to a level of misconduct disqualifying her from receiving severance. With her resignation, she was qualified to receive severance. FAC ¶ 75 (A21).

Defendant-Appellee George's disparate treatment of Green was part of a

7

pattern, in that two Caucasian and Jewish Assistant Directors other than Green were summarily fired by defendant-appellee George without justification. FAC ¶ 34 (A13). Upon information and belief, one was fired in or about 2005 following a dispute with defendant-appellee George over that employee's medical leave. FAC ¶ 35 (A13). The other was fired in or about 2010, at the same time that defendant-appellee George fired another Assistant Director, who was African-American. The African-American Assistant Director, who was responsible for DC 1707's newsletter and was also the Political Action Director, was fired for repeatedly being late with the newsletter. The Caucasian and Jewish Assistant Director was fired for hiring an ex-employee of DC 1707 to work for him in his side business, a business he had been operating in the offices of DC 1707 with the knowledge and permission of defendant-appellee George. Upon information and belief, that employee's termination - for hiring an ex-employee of DC 1707 - was not for a legitimate reason. FAC ¶ 36 (A14).

The two employees fired in 2010 were abruptly fired at a staff meeting held on a Wednesday or Thursday and told to come to work on Monday to argue why they should not be fired. After both men appealed to Defendant-Appellee George to rescind their terminations, George rescinded the termination of the African-American Assistant Director but not the termination of the Caucasian and Jewish Assistant Director. FAC ¶¶ 36-37 (A14).

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Green's claims under 42 U.S.C. §1981 because the FAC contains factual allegations that three employees outside of Green's protected categories, who also reported to Defendant-Appellee George, were treated more leniently than Green in that, when they were deemed worthy of firing, they were allowed to resign and receive post-termination benefits while Green was not. The amended complaint also alleges that Defendant-Appellee George treated two other Caucasian and Jewish employees unjustly in the context of those two employees' terminations from employment

Specifically, Green cites the fact that he was replaced by an African-American man. FAC ¶ 41 (A15). Green also relates the facts of how three similarly-situated employees who were each non-Caucasian and non-Jewish and were treated more favorably by Defendant-Appellee George in the context of George's decision whether or not to fire them and permit them to receive post-termination benefits; and that two other similarly-situated employees who were both Caucasian and Jewish were unjustly fired by Defendant-Appellee George, FAC ¶¶ 34-37.

The District Court erred in ruling that Green had not sufficiently plead that the employees whom Green identifies as similarly situated to him, failing to apply the standard set by this Court in *Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir.

2014). To establish an inference of discrimination based on an employer's treatment of other employees, a plaintiff must allege that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (citing *Graham v. Long Island R.R.,* 230 F.3d 34, 39-40 (2d Cir.2000). What constitutes "all material respects" will vary from case to case, and "to be similarly situated, employees must be subject to the same workplace standards." *Id.* Finally, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss. *Id.*

Green alleges that the African-American and Latino employees who were treated better than him by George held the same level job as Green and were part of a group of eight Assistant Director level employees who reported to George. Like Green, those employees were considered for termination by George. One was re-hired a few days later and the other two were permitted to resign so that they could receive post-termination benefits. Green alleges that he was fired to prevent him from resigning and collecting post-termination benefits.

The District Court improperly made inferences in favor of Defendants-Appellees. The facts plead by Green, considered all in context of each other and taken as true, sufficiently allege that Green was subjected to disparate treatment based on race as compared to similarly situated employees.

# **ARGUMENT**

This Court must review *de novo* the grant of a motion to dismiss pursuant to FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. *Patane v. Clark,* 508 F.3d 106, 111 (2d Cir.2007). A complaint must contain a short and plain statement of the grounds for jurisdiction, statements that show the pleader is entitled to relief and a demand for the relief sought. FRCP 8(a). A complaint may be dismissed pursuant to FRCP 12(b)(6) if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678)). In assessing the sufficiency of a plaintiff's complaint under Rule 12(b)(6), a Court must "draw all inferences in the light most favorable to the non-moving party." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Section 1981 provides a vehicle for every employee to remedy racial discrimination. *Leung v. New York Univ.*, Summ. Order (Dk. No. 13-2267) (2d Cir. Oct. 14, 2014) (citing *Lauture v. IBM*, 216 F.3d 258, 263-64 (2d Cir. 2000). To establish a claim under 42 U.S.C. § 1981(a), a plaintiff must show "(1) that she is a member of a racial minority; (2) an intent to discriminate  on the basis of race

by the defendant and (3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture*, 216 F.3d at 261.

The elements that constitute a claim for employment discrimination under 42 U.S.C. § 1981 are the same as those constituting a claim under Title VII. *White v. Eastman Kodak Company*, 368 Fed. Appx. 200, 202 n.1, Summ. Order (2d Cir. 2010) (citing *Hudson v. Int'l Business Machines Corp.,* 620 F.2d 351, 554 (2d Cir. 1980)). Thus, the second element of a § 1981 claim, an intent to discriminate, is subject to the same burden-shifting analysis as intentional discrimination claims brought under Title VII of the Civil Rights Act of 1964." *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 42, Summ. Order (2d Cir. 2012) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999).

The burden-shifting analysis is as follows: a plaintiff must establish a *prima facie* case of discrimination by showing that the plaintiff is a member of a protected class who satisfactorily performed the requirements of her position or was otherwise qualified, that she was discharged or suffered another adverse action, and that the challenged action occurred under circumstances that give rise to an inference of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The

12

plaintiff's burden of establishing a *prima facie* case is "not onerous." *Texas Dep't of Community Affairs v. Burdine*, *supra*, 450 U.S. at 253.

Nonetheless, at the motion to dismiss stage, a plaintiff in a discrimination suit need not plead all of the elements of a *prima facie* case to be allowed to proceed with his claims. *Brown*, *supra*, 756 F.3d 219, 229 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002)).

## POINT I

### THE AMENDED COMPLAINT SETS FORTH A *PRIMA FACIE* CASE IN THAT GREEN'S REPLACEMENT WAS OUTSIDE OF GREEN'S PROTECTED CATEGORIES

Although Green need not establish the elements of a *prima facie* case at the pleading stage, the elements of a *prima facie* case can nevertheless provide an outline for consideration of "whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Barrett v. Forest Laboratories, Inc.*, 2014 WL 4058683 at *13 (S.D.N.Y. Aug. 2014) (citing *Kassman v. KPMG LLP,* 925 F.Supp.2d 453, 461 (S.D.N.Y. 2013). Here, Green has plead sufficient facts that, if taken as true as they must be, establish a *prima facie* case of discrimination. His facts are amply sufficient to defeat Defendants-Appellees' FRCP 12(b)(6) motion.

**A.** ***Green is a member of a protected category and was qualified for the job he lost.***

Green is a Caucasian man of Jewish ancestry. FAC ¶ 12 (A9). Green was qualified for his job as Organizing Director, in that he brought in approximately 250 new members per year, and he was never issued a warning that his overall work performance was unsatisfactory or deficient. FAC ¶¶ 17-20 (A10). Thus, Green satisfies the first two elements of a *prima facie* case.

**B.** ***Green suffered an adverse action in that his employment was terminated in a way that deprived him of post-termination benefits.***

Green was fired from his job based on a contested allegation of insubordination following a dispute with his supervisor, defendant-appellee George, on May 17, 2013. FAC ¶¶ 53-54, Ex. A (A17-A18, A33). Because his termination letter had both told him he was fired and ordered him to keep working, Green contacted the Associate Executive Director of Defendant-Appellee DC 1707 over the weekend. She confirmed to Green that he was fired and should not return to work. FAC ¶ 55 (A18). A staff meeting was held that Monday to advise staff that Green had been fired and to discuss how Green's responsibilities would be handled going forward. FAC ¶ 56 (A18). In other words, although the firing took place under heated circumstances, over the next two days, defendant-appellee George adhered to his decision to fire Green.

At the same time of his firing, Green suffered another adverse action in that because he was purportedly fired for "extreme insubordination," he was ineligible for severance benefits, which he claims is the reason that George fired him. FAC ¶¶ 59-60 (A18-A19). One inference that may be plausibly drawn from George's decision to fire plaintiff immediately after he ordered Green out of his office was to prevent Green from resigning. Had he resigned, Green would have been eligible for severance pay. FAC ¶ 44 (A15).

**C.** *Green was replaced by an employee outside his protected categories.*

After Green's termination, Green was replaced by an African-American employee. FAC ¶ 41 (A15). The fact that Green was replaced by someone outside his protected class will suffice for the required inference of discrimination to support a *prima facie* case. *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). When he was fired, Green was the only Caucasian and only Jewish employee in an Assistant Director level position at DC 1707. FAC ¶¶ 39-40 (A14-A15). Thus, with Green's firing there were none, and there was an additional Assistant Director who was the same race as Defendant-Appellee George. This circumstance surrounding Green's firing would by itself be sufficient to defeat the motion to dismiss, but it is not the only circumstance giving rise to an inference of discrimination.

## POINT II

## GREEN'S FIRING WAS PART OF A PATTERN OF DISPARATE TREATMENT OF CAUCASIAN AND JEWISH EMPLOYEES AS COMPARED TO SIMILARLY SITUATED AFRICAN-AMERICAN AND LATINO EMPLOYEES

The amended complaint sets forth sufficient factual contentions that Green was treated worse than similarly-situated employees outside his protected categories. Dissatisfied with Green on the basis of an argument that he himself had instigated, Defendant-Appellee George summarily fired Green. FAC ¶¶ 53-54 (A17-A18). George did this even though Green had been employed by DC 1707 for nearly 22 years and was a successful Organizing Director who had never been issued a warning. FAC ¶¶ 13, 18-20 (A9, A10). As the non-moving party, Green is entitled to the inference that his firing was disproportionate to his offense.

For employees to be similarly situated, they "must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001. They must be "subject to the same standards governing performance evaluation and discipline." *Brown, supra,* 756 F.3d at 230 (quoting *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 96 (2d Cir.1999)). In *Brown*, this Court found it sufficient to defeat a motion to

16

dismiss that the plaintiff alleged that he was treated differently than others in his working group, two of whom reported to the same supervisor. *Id.* Here, as detailed below, Green alleges he was treated differently from employees outside of his protected categories within the small group of assistant-director level employees, and that two other Jewish and Caucasian Assistant Director level employees were also treated less well than those employees.

To establish an inference of discrimination based on an employer's treatment of other employees, a plaintiff must allege that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (citing *Graham v. Long Island R.R., supra*, 230 F.3d at 39-40). What constitutes "all material respects" will vary from case to case, and "to be similarly situated, employees must be subject to the same workplace standards." *Id.* Finally, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss. *Id. See also Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir.2003).

A.    ***Green was similar to and treated differently from Employee A***

The way in which Green was terminated contrasts with the way in which Defendant-Appellee George treated a similarly situated Latina employee, Employee A, who in 2007 was discovered to have used a credit card belonging to

DC 1707 for personal use, in violation of union policy.[2] Although Employee A's theft was insubordinate by any definition of the term, that employee was permitted by George to resign from her employment rather than be fired, so she collected sick, vacation and severance pay. FAC ¶¶ 70-73 (A20). While the FAC did not specify Employee A's employee's title, the FAC does make clear that George was the official responsible for the decision whether or not to fire her – thus, like Green she reported directly to George – and that George was the official who permitted Employee A to resign and collect benefits. FAC ¶¶ 70-71 (A20). In addition, it is a reasonable inference that if Employee A had the ability to use the union's credit card, she had a responsible position comparable to Green's. She is also described as being eligible for a full year's pay as severance pay, the same as Green, FAC ¶ 72 (A20), which indicates she was a non-union employee with several years of service. FAC ¶ 45 (A15). In addition, elsewhere in the FAC, Green states that he was treated less well than similarly-situated employees who were not Caucasian or Jewish. FAC ¶ 21 (A10). The details about Employee A constitute one such example. It is respectfully submitted that the omission of Employee A's title is a minor omission that in no way prevents Defendants-Appellees from having notice of the person to whom Green is comparing himself.

---

[2] Because the employee was not named in the FAC, the District Court referred to her as Employee A. For ease of reference, she is referred to herein as Employee A also.

18

As the FAC notes, there were only eight employees holding Assistant Director level positions. FAC ¶ 39 (A14).

The District Court improperly opined that there was no way to know if Employee A would have been fired if she had not resigned. This is an inference in favor of Defendants-Appellees. Moreover, the FAC says Employee A "was permitted by defendant George to resign" explicitly specifying that George made the decision about how the employee's employment would end. FAC ¶ 70 (A20). It is a reasonable inference that George would have fired an employee caught stealing if she had not resigned as he "permitted her" to do. An employee presented with an opportunity to resign is generally offered that opportunity as an alternative to a firing.

It was also improper for the District Court to infer that it was "at least equally conceivable, and indeed more plausible," that the difference between the way Defendant-Appellee George treated Green and how he treated Employee A may have "derived from the fact that the two were accused of different misconduct occurring in different settings. Employee A's disciplinary issues arose in the context of the eventual discovery of past wrongdoing; Green's arose out of a heated confrontation with a supervisor giving rise to an immediate termination." (A46-A47). There is no basis from the amended complaint to infer that Defendant-

19

Appellee George treated Employee A better because of "eventual discovery of past wrongdoing," because the timing of her actions and the discovery of her actions, as well as George's decision to permit her to resign are not mentioned at all. To the extent the District Court's inference could be made from the facts alleged, it is wholly favorable to Defendants-Appellees. A reasonable inference from the facts as plead, the inference that should be made on this motion, is that when faced with a situation where an employee similarly situated to the Green was found to be stealing, what can quite reasonably be inferred as a fire-worthy offense, George chose to permit the other employee to resign *so that she could collect benefits*. FAC ¶¶ 70-71 (A20). This is a strong fact giving rise to an inference of discriminatory disparate treatment.

That there *might be* other plausible, non-discriminatory reasons for allegedly disparate treatment does not mean a plaintiff has failed to state a claim. *Brown*, *supra,* 756 F.3d at 230 ("That there may be other explanations for the defendants' employment decisions does not render Brown's allegations of discrimination inadequate as a matter of law.").

**B.**  ***Green*** *was similar to and treated differently from* ***Employee B***

Defendant-Appellee George's disparate treatment of Green in connection with his firing was part of a pattern, in that two Caucasian and Jewish Assistant

20

Directors other than Green were summarily fired by George without justification. FAC ¶ 34 (A13). Upon information and belief, one was fired in or about 2005 following a dispute with defendant-appellee George over that employee's medical leave. FAC ¶ 35 (A13). The other was fired in or about 2010, at the same time that George fired another Assistant Director, who was African-American. The African-American employee was denominated as Employee B by the District Court. (A40). The disparate way in which defendant-appellee George treated those two employees in 2010 constitutes additional disparate treatment based on race.

Employee B, who was responsible for DC 1707's newsletter and was also the Political Action Director, was fired for repeatedly being late with the newsletter. The Caucasian and Jewish Assistant Director was fired for hiring an ex-employee of DC 1707 to work for him in a side business that the Assistant Director had been operating openly in the offices of DC 1707 with the knowledge and permission of George. Green contends that employee's termination, over the fact he had hired an ex-union employee in his other business, was not for a legitimate reason. FAC ¶ 36 (A14). A reasonable inference from this contention is that the Caucasian and Jewish Assistant Director had no basis to believe that hiring an ex-DC 1707 employee in his business could jeopardize his employment with DC 1707.

21

Those two employees fired in 2010 were abruptly fired at a staff meeting (attended by Green) held on a Wednesday or Thursday and told to come to work on Monday to argue why they should not be fired. After both men appealed to George to rescind their terminations, George rescinded the termination of the African-American Assistant Director but not the termination of the Caucasian and Jewish Assistant Director. FAC ¶¶ 36-37 (A14).

The District Court below found that Employee B was in some respects "an apt comparator for Green: both were terminated in an abrupt manner based on accusations of misconduct, albeit of different types (for Employee B, being late with a newsletter; for Green, insubordination in a meeting with his supervisors). And both employees were given the opportunity to seek reinstatement after George's termination of them: Green by completing a report, Employee B by coming to work to argue why he should not be fired." (A47). However, the District Court then found it "critically important" that Green, unlike Employee B, "chose not to avail himself of George's express offer to reconsider his termination decision" and that factual difference "very plausibly accounts for the different outcomes Green and Employee B experienced: The FAC does not, and cannot, allege that, had Green accepted George's request that he complete the report on which he was working, George would have stuck by his impulsive decision to

22

terminate Green." This reasoning was improper on multiple levels.

First, while Green does indeed consider himself and Employee B comparators, the FAC shows that they were treated differently in important ways. Green was told that if he prepared the report he was working on within two weeks, which was when it was due, George would reconsider. FAC ¶¶ 53-54, Ex. A (A17-A18, A33). The FAC also makes clear that Green was told not to report to work after he was fired. FAC ¶ 55 (A18). It is outrageous for an employer to order a fired employee to keep working, without pay, and to also prevent him from doing that work in the office, where the information and the equipment upon which he could write a report were located. Moreover, the FAC states that Green's duties were reassigned the Monday after the Friday he was fired. FAC ¶ 56 (A18). Since the report was due at the time George told Green to submit it if he wanted to be reconsidered, FAC ¶ 53 (A17), it can be inferred that George also reassigned the task of writing the report. By contrast, Employee B was simply told to come in and plead his case a few days after he was fired. FAC ¶ 37 (A14). Employee B's offer of reconsideration was not conditioned upon him continuing to work for two weeks without pay. That is a critical difference that in itself is disparate treatment of Green as compared to Employee B.

Moreover, Green is under no obligation to assert in his pleadings that even

23

if he had continued working after he was fired and then asked to be re-hired,

George would not have re-hired him. It is enough to plead that he was

unequivocally fired. "In a disparate treatment employment discrimination case the

determinative question is whether, at the time of the adverse employment action,

the defendant was motivated by impermissible factors." *Pierce v. F.R. Tripler &*

*Co.*, 955 F.2d 820, 829 (2d Cir. 1992).

The District Court made more inferences in favor of Defendants-Appellees:

The FAC, in sum, supplies ample ground on which to view George as
volatile: as having both a quick trigger to fire employees but also a
willingness to rescind his sudden termination decisions provided employees
met conditions he set. The issue for the Court is not whether these volatile
employment practices were enlightened. Given the nature of the federal
claims Green brings, it is whether the different outcomes George reached as
to different employees' job statuses derived from racial discrimination.
Here, because Green, unlike Employee B, did not meet the condition that
George had set for him to reconsider reinstatement, Green's termination
cannot be plausibly ascribed to differences in the two employees' races.
More plausibly, it reflects Employee B's willingness, not matched by
Green's, to meet the condition George set for potential reinstatement.
(A48).

Actually, while the FAC arguably presents George as volatile, it does not

present him as in any way likely to rescind Green's termination. The FAC clearly

shows that George had time to consider his decision to fire Green over the

weekend and ratified his decision. FAC ¶ 55 (A18). Moreover, the FAC also states

that the Caucasian and Jewish employee summarily fired at the same meeting as

24

Employee B was fired for an illegitimate reason but was not re-hired after pleading his case in a few days. FAC ¶¶ 36-37 (A14). The District Court omitted all reference to the Caucasian and Jewish employee who plead for his job after being fired but was rejected by George.

There is no reasonable basis to infer from the FAC that Green should have worked after being fired or that he would have been re-hired if he wrote the report he was asked to complete even though he was not allowed in the office. The District Court's analysis of this point is replete with factual inferences made against Green. Moreover, there are other inferences that could be fairly drawn, in Green's favor, from Defendant-Appellee George's suggestion that he might reconsider Green's termination. One is that George knew that his termination of Green was unjustified and probably *should have been* rescinded. But Green alleges he was fired for the express reason of ensuring that he did not receive post-termination benefits, which he could have done if he resigned. FAC ¶ 60. Had George genuinely wanted to give Green a chance, he could have taken an action less drastic than firing, but that would have made it possible for Green to resign, which Green contends George did want him to do. These are inferences too, but they are plausible and should be made on behalf of Green, the non-moving party.

Speculation about whether or not Green *might* have been re-hired had he

worked after his firing should not mean that Green failed to state a claim of disparate treatment. *See Brown*, *supra,* 756 F.3d at 230. Moreover, whether there existed non-pretextual, non-discriminatory explanations for the Defendants-Appellees' employment decisions, a question as to which they bear the burden of production, is not properly decided on a motion to dismiss for failure to state a claim. *Id.* at 230-31 (citing *McDonnell Douglas, supra,* 411 U.S. at 802–03)).

**C.      *Green was similar to and treated differently from Employee C***

Another employee Green contends was similarly situated to him is an employee who was referred to by the District Court as Employee C. (A45). In Fall 2013, it was discovered that Employee C, an African-American Assistant Director who had a long history of performance problems that had not been corrected, had failed to ensure that a group of union members were enrolled in a health insurance program. Even though denying union members health insurance benefits to which they were entitled could have been construed as misconduct, that employee was told to cease performing her duties and write a report on the status of her assignment, but she was kept on the payroll while she did so. She shortly thereafter resigned. With her resignation, she was qualified to receive severance. FAC ¶¶ 32, 75 (A13, A21).

As Assistant Director, Employee C held the same level job as Green, and thus she reported to George. She was determined by Defendant-Appellee George

26

to be subject to termination, as she was ordered to "cease working." FAC ¶ 32 (A13). The District Court erred in stating that the FAC does not allege whether Employee C was in the union. (A49). The FAC states that she was an Assistant Director, which means she was the same level employee as Green, and thus she was necessarily not in the union. FAC ¶ 31 (A12).

Green sufficiently pleads that he and Employee C were, as in *Brown*, "subject to the same performance evaluation and disciplinary standards, and therefore similarly situated in their employment circumstances." *See Brown*, *supra,* 756 F.3d at 230. Employee C, however, when faced with termination for her actions, was treated more favorably, and an inference is properly drawn that her race was a factor in the more generous treatment.

The District Court found that Employee C's problems "reflected incompetence, not misconduct or insubordination; there was no heated incident, as with Green, that immediately preceded the termination decision." (A49). It was wrong for the District Court to make a factual determination that Employee C's actions were incompetence and not misconduct or insubordination, at this stage of the proceedings. Whether or not preventing union members from receiving health insurance benefits - the task Employee C was obligated to carry out but did not - is of comparable seriousness to insulting the same supervisor, Executive Director

27

Raglan George, Jr., is a factual determination that should be made by a jury. That Employee C held the same level job as Green and was ordered by George to cease working, but was given a window of opportunity to resign so she would be eligible for post-termination benefits, is enough to show that she was a similarly situated employee treated better than Green in circumstances of comparable seriousness.

The foregoing demonstrates that Green has amply plead, for purposes of a motion to dismiss, that he was subjected to disparate treatment on the basis of his race, as compared to similarly situated employees.

## POINT III

### GREEN'S AMENDED COMPLAINT SETS OUT ADDITIONAL FACTS THAT PROVIDE CONTEXT AND SUPPORT HIS CLAIMS OF DISPARATE TREATMENT BASED ON RACE

All of the above is given additional factual context in the FAC by other circumstances as well. Defendant-Appellee George treated Green differently from similarly-situated Latino and African-American employees throughout Green's employment. George evinced a dislike of Green from the time he met him that was not based on any specific reason he communicated to Green. FAC ¶¶ 22-23 (A10-A11). Defendant-appellee George regularly spoke to Green in a derogatory tone of voice, in private and in front of Green's colleagues. FAC ¶¶ 25-26 (A11). These facts by themselves do not explicitly evoke a racial motivation, but they do show

28

unjustified animus toward Green by George and, when viewed in the context of other relevant facts, support Green's claim.

Also pertinent is the fact that Green was part of an ethnic minority in the workplace. Throughout the time that Green worked for defendant-appellee DC 1707, more than 80% of the approximately 35 employees were either African-American or Latino. FAC ¶ 38 (A14). While Green served in an Assistant Director position with defendant-appellee DC 1707, either five or six of the eight Assistant Directors were African-American or Latino, and at the time of his termination, Green was the only Caucasian and only Jewish employee of the eight employees in an Assistant Director level position. FAC ¶¶ 39-40 (A14-A15).

Finally, at the time of his termination, Green had 12 1/4 days of accrued but unused vacation pay that should have been paid to him. FAC ¶¶ 76-77 (A21). After he was fired, Defendants-Appellees claimed to apply Green's accrued but unused vacation pay for the two weeks following his termination and promised to pay an additional 1 and 1/4  vacation days, but in fact Defendants-Appellees have paid Green none of the 12 1/4 vacation pay he earned. FAC ¶¶ 78-81; FAC, Ex. B (A22, A34). Green is aware of no employee of Defendant-Appellee DC 1707 other than himself who was willfully denied pay for unused vacation time upon termination, in flagrant disregard of DC 1707's policy and practice. FAC ¶ 84

(A22). This mean-spirited act can be inferred to show an irrational animosity consistent with discriminatory animus.

All of the foregoing shows that Green has stated sufficient facts to support his claims of discriminatory discharge and discriminatory denial of post-termination benefits in violation of 42 U.S.C. § 1981.

## CONCLUSION

For the reasons set forth above, Green respectfully requests that this Court reverse the Opinion & Order of the District Court, deny Defendants-Appellees' motion to dismiss in its entirety and remand the case to the District Court.

Dated:     New York, New York
           November 7, 2014

                                        Respectfully submitted,


                                        _____/s/_____
                                        MARGARET McINTYRE
                                        Attorney for Plaintiff-Appellant
                                        299 Broadway, Suite 1310
                                        New York, New York 10007
                                        (212) 227-9987